UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES RAUH, individually, and as administrator for the estate of Thomas Rauh, | ) ) ) ) | CASE NO. 5:23-cv-2272 |
| | ) | CHIEF JUDGE SARA LIOI |
| PLAINTIFFS, | ) ) ) | MEMORANDUM OPINION |
| vs. | ) ) | AND ORDER |
| FUJING ZHENG, et al., | ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of plaintiff James Rauh ("Rauh"), individually and as administrator for the Estate of Thomas Rauh, for default judgment, pursuant to Fed. R. Civ. P. 55(b), as to Counts I, II, IV, and VI of his action filed against defendants Fujing Zheng, Guanghua Zheng, Guifeng Cheng, Songyan Ji, Longbao Zhang, Guangfu Zheng, Qinsheng Pharmaceutical Technology Co., Ltd. ("Qinsheng"), and Global United Biotechnology, Inc. ("Global Biotechnology"). (Doc. No. 12 (Motion).[1]) The motion is unopposed. For the reasons that follow, default judgment is granted in favor of Rauh as to liability on Counts I, II, and IV and denied as to liability on Count VI, and Rauh is awarded damages in the amount of $30,000,000 and attorneys' fees and costs in the amount of $41,391.

---

[1] This document appears on the docket as an application for entry of default, but it is actually a motion for default judgment.

I. **BACKGROUND**

On November 22, 2023, Rauh filed a complaint alleging that the defendants, all designated as foreign narcotics traffickers by U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), are part of the Zheng Drug Trafficking Organization ("Zheng DTO"), "a global criminal conspiracy involving the manufacture and distribution of illegal narcotics." (Doc. No. 1 (Complaint) ¶ 1.) Rauh alleges that the Zheng DTO distributed acetyl fentanyl and other illegal substances into the United States and that his son, Thomas Rauh ("Thomas"), died as a result of injecting acetyl fentanyl that was manufactured and distributed by the Zheng DTO. (*Id.* ¶¶ 1–2, 38.) In August 2018, the U.S. Attorney's Office for the Northern District of Ohio unsealed a 43-count indictment charging defendants Fujing Zheng and Guanghua Zheng with operating the Zheng DTO conspiracy. (*Id.* ¶ 3.) The indictment charged that the Zheng DTO was responsible for Thomas's death. (*Id.*); *see U.S. v. Fujing Zheng et al.*, No. 1:18-cr-474 (N.D. Ohio) (Doc. No. 1 (Indictment)). The criminal case remains open, and no verdict has been entered on the charges.

Thomas's Estate brought a wrongful death action against the defendants in state court and obtained a judgment for $18,000,000, plus attorneys' fees, court costs, and interest at the statutory rate. *See James Rauh, Administrator v. Fujing Zheng, et al.*, No. cv-2020-07-2116 (Summit Cnty. Ct. Comm. Pl.) (order filed 5/23/2024). Rauh subsequently filed an action in this Court in order to "reach Zheng DTO assets that may be held outside Ohio and/or seized in the future by the United States[.]" (Doc. No. 1 ¶ 4.) Rauh served the defendants through email, publication in the International New York Times, and the "Contact Supplier" function of Qinsheng's website. (*See* Doc. No. 8 (Notice of Service).) Default was entered against the defendants on April 5, 2024, after they failed to timely respond to the complaint. (*See* Doc. No. 11 (Entry of Default).) Rauh then

2

filed the instant motion, seeking a default judgment as to four claims[2]: an Ohio law wrongful death claim (Count I), an Ohio law survivorship claim for negligence (Count II), a claim for liability under Ohio Rev. Code § 2923.31 *et seq.* (Count IV), and a claim for liability under 18 U.S.C. § 2331 *et seq.* (Count VI). (Doc. No. 12, at 3–11[3]; *see also* Doc. No. 1.) Rauh also seeks compensatory damages, punitive damages, and attorneys' fees and costs. (Doc. No. 12, at 11–15; *see also* Doc. No. 1 ¶ 143.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the Clerk against the defendants pursuant to Rule 55(a). (*See* Doc. No. 11.) Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted).

Under Rule 55(b)(2), courts may enter default judgment without a hearing, but may conduct a hearing if necessary to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. In this case, the Court has examined the record before it and plaintiffs' submissions in support of their motion for default judgment and concludes that a hearing is not necessary.

The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing, among other authorities, 10A Charles A. Wright, et al., Federal Practice and Procedure § 2685 (3d ed. 1998) ("This element

---

[2] Rauh does not currently seek default judgment as to Count III (Violation of Ohio Rev. Code § 2307.60) and Count V (Civil Conspiracy) of the complaint, but he states that he reserves the right to seek an entry of default judgment on those counts. (Doc. No. 12, at 2 n.1.)

[3] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

3

of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).")). Thus, the defendants' default does not automatically entitle Rauh to relief.

In order to rule upon Rauh's motion, the Court must determine whether the factual allegations in the complaint deemed admitted by the defendants' default, and reasonable inferences derived therefrom, are sufficient to satisfy the elements of Rauh's legal claims for which he seeks default judgment. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016); *see also Kwik–Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) ("[A] court may not enter default judgment upon a legally insufficient claim." (citations omitted)).

In addition, "[a]n entry of default judgment requires some affirmation that the person against whom the default judgment is obtained is not (1) 'an infant or incompetent person' who is unrepresented; (2) a member of the armed services who is entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et seq.*; or (3) an officer or agency of the United States." *Leach v. Lifeway for Youth, Inc.*, No. 1:07-cv-200, 2008 WL 1990390, at *1 (S.D. Ohio May 1, 2008) (citing Fed. R. Civ. P. 55(b), (c), (e); Advisory Committee Notes to Fed. R. Civ. P. 55, Supplementary Note). As corporations, Qinsheng and Global United are not minors, incompetent persons, or subject to the Soldiers' and Sailors' Civil Relief Act of 1940. *See Zinganything, LLC*, 2016 WL 362359, at *2 (citing *Hitachi Med. Sys. Am., Inc. v. Lubbock Open MRI, Inc.*, No. 5:09-cv-847, 2010 WL 4638057, at *1 (N.D. Ohio Nov. 5, 2010) ("As corporations, the Defaulting Defendants are clearly not infants or incompetent persons.")). Nothing in the record suggests that any of the individual defendants are minors or otherwise incompetent. Accordingly, default judgment is available against all defendants.

### III. DISCUSSION

As stated above, the defendants are deemed to have admitted all of Rauh's well-pleaded factual allegations as to liability. *AF Holdings*, 976 F. Supp. 2d at 929 ("Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true." (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (further citation omitted))). To be well-pleaded, the complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See Reid v. Herrera Harvesting LLC*, No. 2:17-cv-229, 2020 WL 2473491, at *1 (E.D. Tenn. May 13, 2020) (applying Fed. R. Civ. P. 8(a) to a complaint for which plaintiff seeks default judgment (citations omitted)).

#### A. Count I: Ohio Law Wrongful Death Claim

In Count I of the complaint, Rauh alleges that the defendants are liable for the wrongful death of Thomas under Ohio law due to negligence. (Doc. No. 1 ¶¶ 71–79; Doc. No. 12, at 4–7.) The elements of a wrongful death claim under Ohio law are: (1) death of the decedent; (2) commencement of the action within two years thereafter; (3) a wrongful act, neglect, or default of the defendant that proximately caused the death and would have entitled the decedent to maintain an action and recover damages had he not died; (4) decedent's survival by children, parents, or other next of kin; and (5) damages incurred by survivors as a result of the wrongful death. *Bailey v. United States*, 115 F. Supp. 3d 882, 889 (N.D. Ohio 2015) (citing *Mansour v. Woo*, No. 2011-A-0038, 2012 WL 1493862, at *7 (Ohio Ct. App. 2012)).

Rauh alleges that the defendants "each owed a duty of reasonable care to . . . intended recipients . . . of illegal narcotics manufactured and distributed by the Zheng DTO" and that they "each breached their duty of care by carrying on and contributing to the Zheng DTO's conspiracy . . . ." (Doc. No. 1 ¶¶ 72–73.) Rauh also alleges that Thomas suffered damages prior to his death,

5

including physical pain and mental anguish, for which Thomas could have legally recovered had he not died. (*Id.* ¶¶ 86, 96.) Finally, Rauh alleges that Thomas purchased what he believed to be heroin, but which turned out to be fentanyl distributed by the Zheng DTO. (*Id.* ¶ 38.) He alleges that Thomas's use of this fentanyl was the proximate cause of his injury and death. (*Id.* ¶ 76.) These allegations satisfy the first and third elements of a wrongful death claim. *See Bailey*, 115 F. Supp. 3d at 889. Rauh also alleges that he, as Thomas's father, survives Thomas and has incurred damages as a result of Thomas's death. (Doc. No. 1 ¶¶ 5, 77.) Specifically, Rauh alleges that his damages include the "loss of Thomas Rauh's life; loss of Thomas Rauh's support, services, society and companionship, advice, guidance, counsel, instruction, consortium; funeral expenses; mental anguish; and grief." (*Id.* ¶ 77.) These allegations satisfy the fourth and fifth elements.

There are two affirmative defenses that could potentially apply to this claim, but both have been waived by the defendants' non-response. First, as element (2) requires commencement of the action within two years after the alleged wrongful death, Rauh argues that this Court should apply the rule that the statute of limitations begins to run "when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Collins v. Sotka*, 692 N.E.2d 581, 582 (Ohio 1998); (Doc. No. 12, at 5–6). Second, the Court notes that some Ohio courts have found that a default judgment can preclude later actions for the same claims. *See, e.g.*, *Stand Energy Corp., v. Ruyan*, No. C-050004, 2005 WL 2249107, *2 (Ohio Ct. App. Sept. 16, 2005). Therefore, the state court judgment in favor of Rauh, which awarded damages on his wrongful death and survivorship negligence claims, could potentially bar Counts I and II of this action. *See James Rauh, Administrator v. Fujing Zheng, et al.*, No. cv-2020-07-2116 (Summit Cnty. Ct. Comm. Pl.) (orders filed 4/18/2023 and 5/23/2023). The Court need not reach either of these issues, however, because both the statute of limitations and claim

6

preclusion are affirmative defenses that are waived if not raised. Fed R. Civ. P. 8(c); *see also Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988). For these reasons, default judgment is granted as to the wrongful death claim.

### B. Count II: Ohio Law Survivorship Claim for Negligence

Rauh also asserts that he is entitled to recover under an Ohio law survivorship claim because "Thomas Rauh, prior to his death, suffered damages, including enduring conscious and immense pain and suffering of the body and mind." (Doc. No. 1 ¶¶ 80–88; *see also* Doc No. 12, at 7–8.) Like the wrongful death claim, Rauh's survivorship claim appears to sound in negligence. *See James Rauh, Administrator v. Fujing Zheng, et al.*, No. cv-2020-07-2116, (Summit Cnty. Ct. Comm. Pl.) (Complaint ¶ 76). Unlike a wrongful death claim, however, which "belongs exclusively to the decedent's beneficiaries and is meant to cover pecuniary and emotional loss suffered by those beneficiaries as a result of the death[,]" a survivorship claim "is simply the action the decedent could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate." *Cunning v. Windsor House, Inc.*, 208 N.E.3d 246, 260 (Ohio Ct. App. 2023) (citations omitted).

Ohio's survivorship statute provides that "[i]n addition to the causes of action which survive at common law, causes of action for . . . injuries to the person . . . also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." Ohio Rev. Code § 2305.21. Rauh's claim involves "injuries to the person" as contemplated in Ohio Rev. Code § 2305.21—he asserts that his son suffered "immense pain and suffering" as a result of the defendants' actions. (Doc. No. 1 ¶¶ 6, 86–88.) Furthermore, as discussed above, the Court need not consider whether the claim is timely because the statute of limitations is an affirmative defense that has been waived. For these reasons, the Court grants default judgment as to the survivorship

7

claim for negligence.

### C. Count IV: Liability Under Ohio Rev. Code § 2923.31 *et seq.*

Rauh further alleges that the defendants are liable under the Ohio Corrupt Practices Act (OCPA), Ohio Rev. Code § 2923.31 *et seq.* (Doc. No. 1 ¶¶ 99–113; *see also* Doc. No. 12, at 8–10.) This claim also constitutes a survivorship claim. *See* Ohio Rev. Code § 2305.21. Rauh asserts that under Ohio Rev. Code § 2305.21, Ohio's survivorship statute, he may bring an OCPA claim notwithstanding Thomas's death. (Doc. No. 1 ¶¶ 80–88; *see also* Doc. No. 12, at 7.) Section 2305.21 provides that "[i]n addition to the causes of action which survive at common law, causes of action for . . . deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." The complaint alleges that the defendants engaged in fraud. (*See* Doc. No. 1 ¶ 116 ("Defendants each engaged in the Zheng DTO's civil conspiracy to commit fraud and misrepresentation in connection with the manufacture, distribution, facilitation of payments for, and laundering of proceeds from illegal narcotics."); *id.* ¶¶ 102–03, 106–07 (alleging that the defendants committed wire fraud, mail fraud, and telecommunications fraud).) Therefore, Rauh may bring an OCPA claim.

The OCPA provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Ohio Rev. Code § 2923.32(A)(1). To state a claim under the OCPA, a plaintiff must allege (1) that the defendant committed two or more specifically prohibited state or federal criminal offenses, (2) that the defendant's criminal conduct constitutes a pattern, and (3) that the defendant participated in the affairs of an enterprise or had an interest in or control of an enterprise. *Kondrat v. Morris*, 692 N.E.2d 246, 253 (Ohio Ct. App. 1997). Rauh satisfies the first element by alleging that the defendants engaged in "manufacturing

and distributing illegal narcotics . . ., facilitating payments received for such narcotics, and laundering proceeds received for such narcotics" (Doc. No. 1 ¶ 105), all of which are criminal acts.

As to the second element, Ohio Rev. Code § 2923.31(E) defines "[p]attern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." Additionally, the Ohio Supreme Court has held that a "pattern must include both a relationship and continuous activity, as well as proof of the existence of an enterprise[.]" *State v. Miranda*, 5 N.E.3d 603, 606 (Ohio 2014) (citation omitted).

Here, the complaint alleges that the Zheng DTO manufactures hundreds of types of controlled substances (Doc. No. 1 ¶ 27) and has served many customers in both the United States and Europe. (*Id.* ¶ 44.) These allegations indicate that the defendants engaged in far more than two incidents of corrupt activity. They also demonstrate that the alleged incidents occurred throughout the world and therefore were not "so closely related to each other and connected in time and place that they constitute a single event." *See* Ohio Rev. Code § 2923.31(E). Furthermore, the complaint alleges that the Zheng DTO agreed to manufacture counterfeit cancer medication pills. (*Id.* ¶¶ 56–60.) This activity would constitute corrupt activity that was not "closely related and connected in time and place" to the selling of fentanyl to Thomas Rauh, as the fentanyl was sold as an injectable liquid that Thomas believed was heroin. (*Id.* ¶ 38.) These activities are also "related to the affairs of the same enterprise" and "not isolated," Ohio Rev. Code § 2923.31(E); *Miranda*, 5 N.E.3d at 606—they are all part of the Zheng DTO's drug trafficking scheme. Therefore, if there was also an "enterprise," *Miranda*, 5 N.E.3d at 606, the allegations in the complaint are sufficient to allege a pattern of corrupt activity.

9

As for whether there was an enterprise, Ohio Rev. Code § 2923.31(C) defines "[e]nterprise" as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." In *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L.Ed.2d 1265 (2009), the United States Supreme Court provided a test for determining when there is an association-in-fact enterprise. Ohio courts have determined that this test applies to the definition of an "enterprise" used in Ohio Rev. Code § 2923.31(C). *State v. Walker*, 135 N.E.3d 444, 455 (Ohio Ct. App. 2019) (collecting cases), *rev'd on other grounds*, *State v. Dent*, 170 N.E.3d 816 (Ohio 2020). The *Boyle* test provides that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

The complaint as a whole indicates that the Zheng DTO had a "purpose" of conducting drug trafficking and money laundering. (*See generally* Doc. No. 1.) Additionally, the complaint sufficiently alleges that there were "relationships" among the members of the Zheng DTO, as it names defendant Fujing Zheng as "the leader of the Zheng DTO" and says that he operated it "[a]long with his father, Defendant Guanghua Zheng[.]" (Doc. No. 1 ¶ 27.) It also alleges that four of the defendants "participated in the conspiracy by supporting the Zheng DTO's operations." (*Id.* ¶ 29.) Furthermore, it is evident that the Zheng DTO had sufficient "longevity" to pursue its purpose, given that it manufactured and shipped over 250 types of opioid drugs. (*Id.* ¶¶ 33–36.) Therefore, the complaint sufficiently alleges that the Zheng DTO constituted an "enterprise" under the OCPA.

As to the statute of limitations, the OCPA provides that "a civil proceeding or action under

this section may be commenced at any time within five years after the unlawful conduct terminates or the cause of action accrues or within any longer statutory period of limitations that may be applicable." Ohio Rev. Code § 2923.34(J). As explained above, the defendants have waived any statute of limitations defense by not responding. For these reasons, default judgment is granted as to Count IV.

### D. Count VI: Liability Under 18 U.S.C. § 2331 *et seq.*

In Count VI, Rauh alleges that the defendants are liable under the Anti-Terrorism Act (ATA), 18 U.S.C. § 2331 *et seq.* (Doc. No. 1 ¶¶ 125–42; *see also* Doc. No. 12, at 10–11.) A defendant is liable under the ATA "when a United States national is 'injured in his or her person, property, or business by reason of an act of international terrorism.'" *Keren Kayemeth LeIsrael - Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle East*, 66 F.4th 1007, 1013 (D.C. Cir. 2023) (quoting 18 U.S.C. § 2333(a)). Specifically:

> For an act to qualify as "international terrorism," it must (A) "involve violent acts or acts dangerous to human life" that "are . . . or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; (B) "appear to be intended" "to intimidate or coerce a civilian population" or to influence or affect a government by intimidation, coercion, or violence; and (C) occur outside the United States' territorial jurisdiction or "transcend national boundaries."

*Id.* at 1014 (quoting 18 U.S.C. § 2331(1)(A)–(C)).

Taking the allegations in the complaint as true, Thomas was undoubtedly "injured in his person" as a result of the defendants' drug trafficking activities, given that such conduct caused his death. 18 U.S.C. § 2333(a); (*see also* Doc. No. 1 ¶ 2). Additionally, the defendants' drug trafficking activities were "dangerous to human life," "would be [] criminal violation[s] if committed within the jurisdiction of the United States," and "transcend[ed] national boundaries." 18 U.S.C. § 2331(1)(A), (C); (*see also* Doc. No. 1 ¶¶ 20, 22–24).

11

Nonetheless, the defendants are not liable under the ATA. Whether an act "appear[s] to be intended" to intimidate or coerce civilians or influence a government, as required under 18 U.S.C. § 2331(1)(B), "does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions." *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014). An act does not meet this standard when "[t]o the objective observer, . . . [the actors] were motivated by economics" rather than a desire to influence civilians or a government. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 390 (7th Cir. 2018); *see also Gonzalez v. Google LLC*, 2 F.4th 871, 900 (9th Cir. 2021).

Rauh does not allege that the defendants' drug-trafficking activities "were motivated by anything other than economic self-enrichment." *Gonzalez*, 2 F.4th at 900. Rauh "simply state[s], in conclusory fashion, that [the defendants'] actions appear to be intended to achieve any of the enumerated results." *Stansell v. BGP, Inc.*, No. 8:09–cv–2501, 2011 WL 1296881, at *9 (M.D Fla. Mar. 31, 2011).While Rauh alleges that the defendants intended "to coerce citizens of the United States and the state of Ohio" (Doc. No. 1 ¶ 134), he does not allege what the defendants wished to coerce citizens into doing, nor does he allege any actions that the Court views as being intended to coerce. Similarly, Rauh alleges in conclusory fashion that the defendants attempted "to undermine the United States' drug control policies[,] to negatively affect the conduct of the United States government and the state government of Ohio[,] to hinder enforcement of the United States' drug control and customs laws[, and] to hinder enforcement of Ohio's drug control laws[.]" (*Id.*) But attempting to thwart a government's efforts to enact a particular policy does not constitute an attempt "to influence the policy of a government by intimidation or coercion" under 18 U.S.C. § 2331(1)(B). Therefore, the allegations against the defendants do not meet the definition of "international terrorism" under the 18 U.S.C. § 2331(1) and, as a result, the motion for default

judgment is denied as to Count VI.

### E. Damages

Rauh asserts that he is entitled to damages of $15,000,000 on Count I (wrongful death claim), $1,000,000 on Count II (survivorship claim for negligence), $45,000,000 on Count IV (OCPA liability), and $45,000,000 on Count VI (ATA liability), as well as $2,000,000 in punitive damages. (*See* Doc. No. 12-1 (Proposed Order), at 2.) The requested amounts are based on the state court's determination that Rauh is entitled to $15,000,000 on his wrongful death claim, $1,000,000 on his survivorship negligence claim, and $2,000,000 in punitive damages. *See James Rauh, Administrator v. Fujing Zheng, et al.*, No. cv-2020-07-2116 (Summit Cnty. Ct. Comm. Pl.) (orders filed 4/18/2023 and 5/23/2023). As discussed more fully below, Rauh is entitled to $30,000,000 in damages on his OCPA claim, and damages for the wrongful death and survivorship claims are denied because they would constitute an impermissible double recovery. Additionally, damages for the ATA claim are denied because default judgment is denied as to that claim.

While a plaintiff's well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, the same is not true for damages. *Ford Motor Co.*, 441 F. Supp. 2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104, 5 S. Ct. 788, 29 L.Ed. 105 (1885)) (further citations omitted); *Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc.*, No. 01-cv-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2022) ("[A]llegations of the complaint regarding the amount of damages suffered are not controlling[.]" (citations omitted)). The "civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-cv-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enter.*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Fed. R. Civ. P. 55(b)(2) provides that a district court "may" hold a hearing on a motion for default judgment when necessary to "conduct an accounting," or "determine the amount of damages." But by its terms, the rule "does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")). An evidentiary hearing is not necessary in this case because the defendants "have shown that they do not intend to defend in this action." *See Bradley v. Miller*, No. 1:10-cv-760, 2015 WL 2130980, at *2 n.2 (S.D. Ohio May 7, 2015).

Furthermore, as required by *Vesligaj*, 331 F. App'x at 354, there is a "basis for the damages specified" in Rauh's motion for default judgment—namely, the state court's judgment. (Doc. No. 12, at 11, 13.) This Court is permitted to take judicial notice of the state court docket. *See Carver v. Warden, Allen Oakwood Corr. Inst.*, No. 1:22-cv-132, 2022 WL 3371991, at *1 (S.D. Ohio July 26, 2022) (taking judicial notice of "relevant state-court records"), *report and recommendation adopted*, No. 1:22-cv-132, 2022 WL 5107140 (S.D. Ohio Oct. 5, 2022); *Slusher v. Reader*, No. 2:18-cv-570, 2019 WL 1384423, at *4 (S.D. Ohio Mar. 27, 2019) (taking judicial notice of state court proceedings and docket); *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 455 (N.D. Ohio 2012) (explaining that a federal court may take judicial notice of an Ohio state court case docket if the plaintiffs refer to the Ohio state court case in their complaint).

Federal courts are prohibited from granting default judgment as to damages that would result in a double recovery for the same injury. For example, in *Can IV Packard Square, LLC v. Schubiner*, No. 21-1717, 2022 WL 3335697, at *1 (6th Cir. Aug. 12, 2022), the plaintiff company loaned money to a development company to finance an apartment-retail complex and secured the

loan with a mortgage on the property. Additionally, the defendant, a member of the development company, executed a guaranty to cover completion costs above and beyond the original budget for the complex. *Id.* The plaintiff company foreclosed on the property and recouped the guaranty amount through a sheriff's sale and a state court judgment. *Id.* It then sued in federal court to enforce the guaranty, and the district court awarded money damages. *Id.* The Sixth Circuit determined that this was an "impermissible double recovery." *Id.* It reasoned that because the relevant state law prohibited double recovery for the same injury, "the case boil[ed] down to this: Has [plaintiff] already recovered for an identical injury?" *Id.* at *3.

Like the relevant state law in *Can IV*, "Ohio law prevents a double recovery for the same injury." *Credit Acceptance Corp. v. Davisson*, No.: 1:08-cv-107, 2008 WL 11378851, at *5 (N.D. Ohio Nov. 24, 2008) (citing *Holeton v. Crouse Cartage Co.*, 748 N.E.2d 1111, 1118 (Ohio 2001)). Therefore, the Court must deny default judgment as to damages on the wrongful death and survivorship claims because Rauh has already obtained a judgment for damages in state court. Likewise, the Court must deny default judgment as to punitive damages because Rauh has obtained a judgment in state court based on his wrongful death and negligence claims. (Doc. No. 12, at 13.) However, because the state court did not grant a judgment for damages on the OCPA claim. Therefore, the Court is permitted to grant default judgment as to damages on Count IV.

The OCPA allows plaintiffs to be awarded "triple [their] actual damages" for injuries resulting from OCPA violations. Ohio Rev. Code § 2923.34(E). "[T]o recover triple damages, [plaintiffs] shall prove the violation or conspiracy to violate [the OCPA] and actual damages by clear and convincing evidence." *Bradley*, 2015 WL 2130980, at *2 (citing Ohio Rev. Code § 2923.34(E)). Here, Rauh requests $45,000,000, which is triple the damages that the state court found that he is entitled on the wrongful death claim. (Doc. No. 12, at 11–12.) As discussed above,

15

Rauh has made factual allegations that, when taken as true, establish an Ohio law wrongful death claim. These allegations, combined with "the failure of Defendants . . . to offer any argument or evidence in opposition," allow the Court to conclude that Rauh has satisfied the clear and convincing standard contained in § 2923.34(E). *See Bradley*, 2015 WL 2130980, at *2.

Nonetheless, Rauh has already obtained a judgment of $15,000,000 for the "same injury" in his state court wrongful death action. *Credit Acceptance Corp.*, 2008 WL 11378851, at *5. In *Credit Acceptance Corp.*, a court found that a party could not recover damages in a conversion action because the recoverable damages were equal to the market value of the affected property, but the party could also recover that amount on their wrongful repossession claim. *Id.* Therefore, the Court reasoned, there were "no new potential actual damages" contained in the cause of action for conversion. *Id.* Here, there are "new potential actual damages" for Thomas's wrongful death in the form of triple damages on the OCPA claim. But the Court must subtract the $15,000,000 in damages Rauh obtained in state court because they are not "new" damages. Otherwise, Rauh would obtain an impermissible double recovery. Rauh is therefore entitled to $30,000,000 in damages on his OCPA claim.[4]

### F. Attorneys' Fees and Costs

The OCPA and ATA allow prevailing plaintiffs to recover attorneys' fees. *See* Ohio Rev. Code § 2923.34(F); 18 U.S.C. § 2333(a). Because default judgment has been denied as to the ATA claim, the Court must determine whether it is appropriate to reduce the attorneys' fee award accordingly. When a plaintiff brings "distinctly different claims for relief that are based on different facts and legal theories[,] . . . work on an unsuccessful claim cannot be deemed to have

---

[4] Ohio Rev. Code § 2923.34(E) also allows Rauh to obtain triple the damages to which he is entitled on his survivorship claim for negligence, but he does not seek those damages.

been expended in pursuit of the ultimate result achieved." *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983) (quotation marks and citation omitted). But when a plaintiff's claims involve "a common core of facts or will be based on related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. Therefore, if the plaintiff in such a case has "obtained excellent results," an appropriate award of attorneys' fees will typically "encompass all hours reasonably expended on the litigation[.]" *Id.* Here, Rauh's claims are all based on the same set of facts—the defendants' drug trafficking activity and Thomas's death as a result of injecting acetyl fentanyl that the defendants manufactured and distributed. (*See generally* Doc. No. 1.) Furthermore, Rauh obtained an excellent result in the form of a default judgment as to liability on three of his claims and a large damages award on his OCPA claim. Therefore, Rauh's counsel are entitled to attorneys' fees for all hours expended on this case.

To determine reasonable attorneys' fees, a district court "begins by determining the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)) (quotation marks omitted). To prove that the purported fees are reasonable, the requesting party must provide enough evidence "supporting the hours worked and rates claimed." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (quoting *Hensley*, 461 U.S. at 433). Courts must apply a "strong presumption" that the lodestar fee represents a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992).

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate,

defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citation omitted). The requested award of $38,184 in attorneys' fees to Rauh's counsel (Doc. No. 12, at 15) is supported by the affidavit of Attorney Nolan M. Jackson. (Doc. No. 12, at 20–24.) The affidavit provides hourly rates of $480 (while the attorney was a partner) and $385 (while the attorney was a managing associate), $405, and $345 for the attorneys who worked on this matter.[5] (*Id.* at 23.) The Court finds that the hourly rates charged are reasonable. *See McKnight v. Erico Int'l Corp.*, No. 1:21-cv-1826, 2023 WL 2003276, at *13–14 (N.D. Ohio Feb. 8, 2023) (finding hourly rates of $500, $425, and $400 to be reasonable).

Additionally, the affidavit indicated that the firm representing Rauh has billed a total of 100.1 hours of time on this case, including 92.5 hours of attorney time. (Doc. No. 12, at 22.) The Court finds the number of hours expended reasonable, given the extensive work required to (1) draft (a) Rauh's 31-page complaint (Doc. No. 1), (b) a 16-page motion for an order authorizing service thorough alternative means (Doc. No. 4), and (c) a 15-page motion for default judgment (Doc. No. 12); (2) attempt alternative means of service and file a 17-page notice of service through alternative means (Doc. No. 8); and (3) conduct research on various legal issues. (*See* Doc. No. 12, at 21–22.)

The Court cannot determine the exact lodestar calculation in this case because Rauh's attorneys have not provided the number of hours that each attorney worked. But regardless of how the hours were divided among the attorneys, the proposed award would be roughly equal to the lodestar. Multiplying the total number of attorney hours (92.5) by the lowest hourly rate provided, $345, yields a lodestar of $31,912.50, while multiplying it by the highest rate, $480, yields a

---

[5] The hourly rates for the support staff on this matter were all $260 per hour or lower. (*Id.* at 23.)

lodestar of $44,400.00. The proposed award of $38,184 is between these two amounts, thus demonstrating that it is close to the lodestar. For these reasons, the Court find that the proposed attorneys' fee award is reasonable.

The affidavit also establishes that Rauh incurred $3,207 in costs, including a filing fee of $402 and a cost of $2,805 to achieve service of process through publication in the New York Times International Edition. (*Id.* at 23.) The Court finds that these costs are reasonable.

## IV.   CONCLUSION

For the foregoing reasons, Rauh's motion for default judgment is GRANTED as to liability on Counts I, II, and IV and DENIED as to liability on Count VI. Rauh is AWARDED damages in the amount of $30,000,000, plus attorney's fees and costs in the amount of $41,391, for an aggregate damages award of $30,041,391. Rauh has 30 days from the date of this order to either dismiss or file a dispositive motion as to Counts III and V. If he does not do so, the Court will find those claims abandoned and dismissed and will enter a final judgment.

**IT IS SO ORDERED**.

Dated: July 9, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**