UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES RAUH, individually, and as administrator for the estate of Thomas Rauh, ) ) ) ) ) | CASE NO. 5:23-cv-2272 |
| ) | CHIEF JUDGE SARA LIOI |
| PLAINTIFFS, ) ) | |
| ) | MEMORANDUM OPINION |
| vs. ) | AND ORDER |
| ) | |
| FUJING ZHENG, et al., ) ) ) | |
| DEFENDANTS. ) | |

Before the Court is plaintiffs' motion for reconsideration (Doc. No. 17 (Motion for Reconsideration) of the Court's decision denying default judgment as to their Anti-Terrorism Act (ATA) claim. (Doc. No. 13 (Memorandum Opinion and Order).) For the reasons that follow, the motion for reconsideration is DENIED.

**I.   BACKGROUND**

On November 22, 2023, plaintiff James Rauh ("Rauh"), individually and as administrator for the Estate of Thomas Rauh, filed a complaint alleging that the defendants, all designated as foreign narcotics traffickers by U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), are part of the Zheng Drug Trafficking Organization ("Zheng DTO"), "a global criminal conspiracy involving the manufacture and distribution of illegal narcotics." (Doc. No. 1 (Complaint) ¶ 1.) Rauh alleges that the Zheng DTO distributed acetyl fentanyl and other illegal substances in the United States and that his son, Thomas Rauh ("Thomas"), died as a result of injecting acetyl fentanyl that was manufactured and distributed by the Zheng DTO. (*Id.* ¶¶ 1–2,

38.)Thomas's Estate brought a wrongful death action against the defendants in state court and obtained a judgment for $18,000,000, plus attorneys' fees, court costs, and interest at the statutory rate. *See James Rauh, Administrator v. Fujing Zheng, et al.*, No. cv-2020-07-2116 (Summit Cnty. Ct. Comm. Pl.) (order filed 5/23/2024).

Rauh subsequently filed an action in this Court to "reach Zheng DTO assets that may be held outside Ohio and/or seized in the future by the United States[.]" (Doc. No. 1 ¶ 4.) Default was entered against the defendants on April 5, 2024, after they failed to timely respond to the complaint. (*See* Doc. No. 11 (Entry of Default).) Rauh then filed a motion for default judgment seeking $45,000,000.00 in damages on four claims: an Ohio law wrongful death claim (Count I), an Ohio law survivorship claim for negligence (Count II), a claim for liability under the Ohio Corrupt Practices Act (OCPA) (Count IV), and a claim for liability under the ATA (Count VI). (Doc. No. 12 (Motion for Default Judgment), at 3–15[1]; *see also* Doc. No. 1.)

The Court granted default judgment on all claims except for the claim for liability under the ATA. (Doc. No. 13.) The Court denied summary judgment on the ATA claim because, as alleged, the defendants' actions did not "appear to be intended" to intimidate or coerce civilians or influence a government, as required under 18 U.S.C. § 2331(1)(B). (*Id.* at 12–13.) The Court also granted $30,000,000 in compensatory and punitive damages, plus $41,391 in attorneys' fees and costs. (*Id.* at 15–19.) The Court reduced Rauh's requested damages award by $15,000,000 to avoid a double recovery since he had already recovered $15,000,000 on a wrongful death claim in state court. (*Id.* at 15–16.) On August 5, 2024, Rauh voluntarily dismissed the remaining claims for which he had not sought default judgment. (Doc. No. 15 (Notice of Dismissal).)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

2

## II. STANDARD OF REVIEW

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it serves a legitimate and valuable role in certain situations. *Nat'l Union Fire Ins. Co. v. Continental Illinois Corp.*, 116 F.R.D. 252, 253 (N.D. Ill. 1987) (citing *Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99 (E.D. Va. 1983)). Such a motion is typically treated as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380, 382 (6th Cir. 1991) (citing *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979)).

Generally, only three situations justify a district court in altering or amending its judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence; or (3) to correct a clear error of law or to prevent a manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004) (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). Moreover, the motion for reconsideration must demonstrate to the court why it should reconsider its decision and set forth strongly convincing facts or law that would induce it to reverse its prior decision. *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988).

## III. DISCUSSION

### A. Newly Discovered Evidence

Rauh first argues that the Court should reconsider its decision to deny default judgment as to his ATA claim in light of newly discovered evidence (Doc. No. 17, at 8–12)—namely, a report on "The CCP's Role in the Fentanyl Crisis" released by the U.S. House of Representatives' Select Committee on the Strategic Competition Between the United States and the Chinese Communist Party ("CCP"). (Doc. No. 17-1 (Report).) Rauh argues that this report demonstrates the Zheng

3

DTO's intent to influence the United States government by trafficking in fentanyl. (Doc. No. 17, at 8–12.) The report was published on April 16, 2024. *See Reports*, THE SELECT COMMITTEE ON THE CCP, https://selectcommitteeontheccp.house.gov/documents/reports (Apr. 16, 2024). But the report does not constitute new evidence that the Court may consider in a motion for reconsideration. "[E]vidence is 'unavailable,' so as to justify its late submission by way of a motion under Rule 59(e), only if it could not, in the exercise of reasonable diligence, have been submitted before." *See Javetz v. Bd. of Control, Grand Valley State Univ.*, 903 F. Supp. 1181, 1191 (W.D. Mich. 1995) (citations omitted); *Chery v. Bowman*, 901 F.2d 1053, 1057 n.6 (11th Cir. 1990) ("When supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered or, if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.") (citation omitted); *Mohorne-El v. Beal Bank, SSB*, No. 06-61308-CIV, 2010 WL 11590916, at *2 (S.D. Fla. Mar. 19, 2010) (referring to "'newly discovered evidence' that could not have been discovered prior to the ruling even with reasonable diligence" as a possible ground for granting a motion for reconsideration of a decision denying a motion for default judgment). In this case, the report was available on April 16, 2024, three days before Rauh moved this Court for default judgment (*see* Doc. No. 17, at 8; Doc. No. 12) and eighty-four days before the Court ruled upon the motion. Rauh makes no argument to suggest that he exercised diligence in attempting to obtain the report. Evidence that existed and is newly discovered *by the plaintiff* does not provide a proper basis for granting Rauh's motion for reconsideration.

Rauh argues that the Court could not have considered the report in ruling on the motion for default judgment because its analysis was limited to "factual allegations in the complaint . . . and reasonable inferences derived therefrom[.]" (Doc. No. 17, at 10 (quoting *Failali v. E. Coast*

4

*Performance LLC*, No. 5:22-cv-2038, 2023 WL 5671937, at *2 (N.D. Ohio Sept. 1, 2023)).) Rauh is correct that the Court's adjudication of the motion for default judgment was limited to the allegations in the complaint. And because the report does not constitute newly discovered evidence, the Court's analysis of his motion for reconsideration remains limited to the complaint. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (treating plaintiff's motion for reconsideration as a motion to amend its complaint where plaintiff could not show that evidence was newly discovered).

The production of the report does not, in any way, alleviate the pleading deficiencies identified in the Court's July 9, 2024 Memorandum Opinion. (See Doc. No. 13, at 11–13.) Rauh could have perhaps used the report to craft a different set of factual allegations that might have stated a materially different, viable claim under the ATA, but he elected not to do so. *See Reynolds-Bey v. Harris-Spicer*, No. 1:05-cv-842, 2007 WL 1063304, at *1 (W.D. Mich. Apr. 4, 2007) ("[When] no defendant has yet filed a responsive pleading to the original complaint, plaintiff is entitled to amend his complaint as of right pursuant to Fed.R.Civ.P. 15(a)."). Rauh offers no justification for his failure to amend the complaint to include the information contained in the report before he sought judgment on the claim.

Without newly discovered evidence, and having neglected to amend his complaint before judgment, Rauh's motion for reconsideration is akin to a motion to amend a complaint after an adverse judgment. As the Sixth Circuit has observed:

> When a party seeks to amend a complaint after an adverse judgment, it . . . must shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60.

*Leisure Caviar, LLC*, 616 F.3d at 616. A court may deny such a post-judgment motion because of

"delay resulting from a failure to incorporate 'previously [ ]available' evidence" and "ought to pay particular attention to 'the movant's explanation for failing to seek leave to amend prior to the entry of judgment.'" *Id.* (citations omitted); *see also Haney v. Educ. Credit Mgmt. Corp.*, No. CIV. 12-08, 2012 WL 3683533, at *4 (E.D. Ky. Aug. 27, 2012) (finding that plaintiff's failure to incorporate previously available information justified denial of leave to amend). Courts have adopted this rule because "[i]f a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision." *Leisure Caviar*, 616 F.3d at 616 (quotation marks and citation omitted). Here, Rauh's failure to explain why he could not have used the report pre-judgment to file an amended complaint is fatal to his request for reconsideration based on newly discovered evidence.

### B. Clear Error and Manifest Injustice

In addition to asserting that the Court should consider new evidence, Rauh argues that the Court should grant his motion for reconsideration because it committed clear error (Doc. No. 17, at 6–8) and to prevent a manifest injustice. (*Id.* at 12–14.) The Court notes at the outset that these portions of the motion are essentially attempts to reargue the motion for default judgment. A motion for reconsideration is not a proper forum for such arguments. *See Beamer v. Bd. of Crawford Twp. Trustees*, No. 2:09-cv-213, 2010 WL 1253908, at *2 (S.D. Ohio Mar. 24, 2010) ("When a motion for reconsideration raises only a disagreement by a party with a decision of the court, that dispute should be dealt with in the normal appellate process . . . ." (internal quotation marks and citation omitted)). Nevertheless, out of an abundance of caution, the Court will address each argument.

As for Rauh's clear error argument, the Court maintains that the complaint supports no

"plausible alternative explanation[s]" for defendants' conduct. *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 358 (E.D.N.Y. 2019); (*see* Doc. No. 13, at 12). Citing *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 236 (D.C. Cir. 2022), Rauh argues that "transnational drug cartels act with multifarious purposes, including with intent to achieve *non-economic* ends." (Doc. No. 17, at 8 n.1.) But *Atchley* is distinguishable because the plaintiffs in that case alleged that the defendants sold drugs on the black market for the purpose of "financing acts of international terrorism[,]" including converting public hospitals "into terrorist bases where Sunnis were abducted, tortured, and murdered" and "transport[ing] terrorist 'death squads' around Baghdad." *Atchley*, 22 F.4th at 212, 236. In this case, plaintiffs make no allegations that defendants were engaging in drug trafficking to finance any specific endeavors at all, let alone acts of terrorism. (*See generally* Doc. No. 1.) Thus, Rauh cannot meet his burden to show that the Zheng DTO intended to coerce or intimidate civilians or influence the policy or conduct of a United States government. *See* 18 U.S.C. § (1)(B)(i)–(iii). For these reasons, there is no clear error that justifies granting Rauh's motion for reconsideration.

Finally, turning to Rauh's argument that granting his motion would prevent a manifest injustice, the Sixth Circuit has explained:

> Our cases do not offer clear guidance as to what qualifies as "manifest injustice," but the plain meaning of those words is instructive. Black's Law Dictionary defines the phrase "manifest injustice" to mean: "An error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds."

*Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319, 330–31 (6th Cir. 2014) (quoting BLACK'S LAW DICTIONARY 982 (8th ed. 2004)). As explained above, Rauh has not met his burden to establish that the Zheng DTO engaged in international terrorism as defined by the ATA. *See* 18 U.S.C. §§ 2331(1). Rauh's argument regarding his inability to collect on the Court's

7

judgment absent a favorable ruling on the ATA claim (Doc. No. 17, at 13) does not provide a basis for the Court to award default judgment where the pleading standards are not met. *Am. Accessories, Int'l, LLC v. Conopco, Inc.*, No. 3:15-cv-49, 2017 WL 52606, at *9 (E.D. Tenn. Jan. 4, 2017) ("[H]aving no available remedy does not mandate finding that there is manifest injustice when plaintiff [had] the ability to amend its complaint previously and chose not to." (citing *Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, No. 13-14241, 2015 WL 5216579, at *5 (E.D. Mich. Sept. 4, 2015))). Therefore, there is no "manifest injustice" that allows the Court to grant the motion for reconsideration.[2]

C. *Additional Pleading Deficiencies Under the ATA*

In addition to the foregoing reasons for denying the motion, there are several problems with the theory of ATA liability Rauh offers. The Court will address these problems in the interest of thoroughness. Even if the report qualified as "newly discovered evidence," the subject of the report is the CCP, who is not a defendant in this case. Rauh has not presented the Court with sufficient reason to treat the Zheng DTO as legally or factually indistinguishable from the CCP.[3] (*See generally* Report.) The Court notes that the ATA also provides an alternative pathway for American victims to seek redress against actors who *aided* the commission of another entity's terrorist act. 18 U.S.C. § 2333(d)(2). Rauh did not state a claim under this section, but even if he

---

[2] Even if the Court granted default judgment on Rauh's ATA claim, it could not increase his damages award because "Ohio law prevents a double recovery for the same injury." *Credit Acceptance Corp. v. Davisson*, No. 1:08-cv-107, 2008 WL 11378851, at *5 (N.D. Ohio Nov. 24, 2008) (citing *Holeton v. Crouse Cartage Co.*, 748 N.E.2d 1111, 1118 (Ohio 2001)). Rauh obtained a judgment for damages in state court on his wrongful death and survivorship claims, as well as punitive damages. *See James Rauh, Administrator v. Fujing Zheng, et al.*, No. cv-2020-07-2116 (Summit Cnty. Ct. Comm. Pl.) (order filed 5/23/2024). Additionally, this Court already granted him triple his actual damages on his OCPA claim. (Doc. No. 13, at 15–16.) Any damages for Rauh's ATA claim would arise out of the "same injury" for which maximum damages were already awarded—namely, his son's death after injecting fentanyl. *See Credit Acceptance Corp.*, 2008 WL 11378851, at *5. Therefore, those damages would constitute an impermissible double recovery.

[3] The report quotes Secretary of State Antony Blinken to explain that "there's really no distinction between private companies and the state" in China. (Report at 22.) But this Court does not *infer* liability, under the ATA or otherwise, based on a company's national origin, alone.

did, the elements for relief under the ATA would likely still not be met.

The report argues that the Chinese Communist Party uses tax rebates and other monetary rewards to incentivize Chinese companies to manufacture and export illicit fentanyl materials abroad (Report at 10–20), holds ownership interests in several companies that manufacture and export illicit fentanyl materials (*Id.* at 20–23),[4] and intentionally fails to prosecute illicit fentanyl exporters while "aggressively" prosecuting illicit sales in the domestic market (*Id.* at 31–32). These policies, the report alleges, are crafted to advance the CCP's strategic and economic interests at the expense of the West, whose "ideology and social system are fundamentally incompatible" with China's own. (*Id.* at 32–35.)

The report does mention one of the defendants in this case, Fujing Zheng, to explain that Chinese officials have "obfuscated, delayed, and attempted to dissuade American law enforcement from prosecuting criminal fentanyl traffickers." (*Id.* at 24 (explaining CCP officials admitted that the Zhengs were trafficking in fentanyl analogues, but falsely claimed that they could not prosecute the case because the substances were not scheduled under Chinese law).) Based on the CCP's apparent unwillingness to prosecute Zheng, Rauh asks the Court to conclude that the defendants are "working alongside" the CCP and have been "weaponized" to commit acts of international terror. (Doc. No. 17, at 2, 10–11.) But even if the CCP offers tacit approval through a policy of leniency towards fentanyl exporters, that does not demonstrate that the Zheng DTO's own actions "appear to be intended" "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," which the ATA requires to properly distinguish acts of

---

[4] Qinsheng Pharmaceutical Technology Co., Ltd. and Global United Biotechnology, Inc., the two corporate entities named as defendants in this case, are not named in the report as companies that the Chinese government has an ownership interest in. (Report at 20–23.)

terrorism from other crimes. 18 U.S.C. §§ 2331(1), (1)(B)(i)–(iii).

Further, Rauh does not explain how the geopolitical motives the report attributes to the CCP's narcotics policies—the basis for Rauh's assertion that the "Chinese government" is working "to impact United States and Ohio policies through coercion" —can also be attributed to the defendants in this case.[5] (*See generally* Report; Doc. No. 17, at 2.) In sum, Rauh's motion for reconsideration suffers the same flaw the Court identified in its July 9 Order. (Doc. No. 13, at 11–12.) As alleged, the *defendants* in this case still do not objectively "appear to [have] intended" to commit an act of international terrorism.[6] *Id.*; 18 U.S.C. § 2331(1).

The Court notes that American victims of international terror no longer need to sue the terrorists themselves to obtain relief under the ATA. *Twitter, Inc. v. Taamneh,* 598 U.S. 471, 483–84, 143 S. Ct. 1206, 215 L. Ed. 2d 444 (2023). In 2016, Congress enacted the Justice Against Sponsors of Terrorism Act (JASTA) to provide a form of secondary civil liability under the ATA. *Id.; see* 18 U.S.C. § 2333(d)(2). Those injured by an act of international terrorism can now either sue the terrorists directly under § 2333(a) or they can sue anyone "who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism" under § 2333(d)(2). *See, e.g. Kaplan v. Lebanese Canadian Bank,*

---

[5] The report does not describe the CCP's actions as "terrorism."

[6] Although not necessary to the resolution of the case, it bears reporting that, in arguing that this Court erred in concluding an "objective observer" would not find that defendants' actions "appear to be intended" to be an act of international terrorism, which § 2331(1) requires to distinguish terrorist acts from other crimes, Rauh misstates what the "objective observer" test requires. (*See* Doc. No. 17, at 10 ("With the benefit of the Report, an objective observer may conclude that Plaintiffs' allegations satisfy the definition of "international terrorism.").) The United States Courts of Appeals for the Second and Seventh Circuits have both held that the ATA's "appear to be intended" requirement "does not depend on the actor's internal beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions." *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 (2d Cir. 2014); *Boim v. Holy Land Found. for Relief and Dev.,* 549 F.3d 685, 693–94 (7th Cir. 2008) (a knowing donor to Hamas "appear[s] to intend[]" to contribute to an act of terrorism because it is highly foreseeable that such donations would enable Hamas to kill or wound more people in Israel). But Rauh conflates an "objective observer" with a person who has read the Committee's report and leaves out the threshold requirement of "*apparent* intentions" entirely. (Doc. No. 17 at 10); *Weiss,* 768 F.3d at 207.

10

*SAL,* 999 F.3d 842 (2nd Cir. 2021) (American citizens injured by terrorist attacks pled plausible JASTA claim by alleging that bank knowingly allowed terrorists to launder money to circumvent financial sanctions against them).

Rauh's theory of liability in the motion for reconsideration appears to draw from both § 2333(a) and § 2333(d)(2) but fails to plausibly allege a claim under either section. (*See generally* Doc. No. 17.) The motion names the CCP as progenitor of the terroristic effort to addict Americans to fentanyl, with the Zheng DTO as its "agents of influence," and argues that this Court wrongly concluded in its July 9 Order that the Zheng DTO's apparent objective in trafficking the fentanyl was "purely economic." (*Id.* at 8, 9, 11; *see* Doc. No. 13, at 12.) According to Rauh, the defendants had another objective: to advance the CCP's "modern warfare" through "partnership." (Doc. No. 17, at 9.) In this way, Rauh characterizes the defendants as agents of a principal, who "conspire[d]" with the CCP to undermine American interests. § 2333(d)(2).

Yet a JASTA claim requires a showing that defendants "*knowingly* provid[e] substantial assistance" to a terrorist. *Id.* Rauh admits his motion is entirely "absent allegations that Defendants *intended* to assist the CCP's drug warfare." (Doc. No. 17, at 11.) Thus, though the facts of this case resemble an aiding-and-abetting theory, Rauh lacks a critical element for secondary liability under the ATA, as well. *See Twitter, Inc.,* 598 U.S. 471 (American victims of international terror failed to plead plausible JASTA claim against social media platform that published pro-terror content because they did not establish that social media platform knowingly had any involvement in the commission of the terrorist act).[7]

---

[7] Importantly, JASTA also requires that the actor directly responsible for the terrorism, whom the defendant aided-and-abetted, be registered by the United States Secretary of State as a foreign terrorist organization, pursuant to 8 U.S.C. § 1189. The CCP is not currently designated as a foreign terrorist organization. *See Foreign Terrorist Organizations,* THE UNITED STATES DEPARTMENT OF STATE, BUREAU OF COUNTER TERRORISM, https://www.state.gov/foreign-terrorist-organizations/.

As explained, Rauh did not provide the Court with a proper basis for granting his motion for reconsideration based on "newly discovered evidence." But even if the report was new, its production would exacerbate the pleading deficiencies the Court first identified in its July 9, 2024, Memorandum Opinion. (*See* Doc. No. 13, at 11–13.)

## IV. CONCLUSION

For the reasons given, Rauh's motion for reconsideration (Doc. No. 17) is DENIED.

**IT IS SO ORDERED**.

Dated: September 18, 2024

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**